Entered: September 25th, 2018
Signed: September 25th, 2018



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | |
|---|---|
| In re: | * |
| | * |
| Theodore Wood, | *   Case No. 18-11415-MMH |
| | * |
| Debtor. | *   Chapter 13 |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The automatic stay of section 362(a) of the Bankruptcy Code is one of the most critical protections provided to a debtor in a bankruptcy case. The automatic stay stops the chaos surrounding the financially distressed individual or business and "provides [that] debtor with a 'breathing spell' from the harassing actions of creditors." *In re Schwartz-Tallard*, 803 F.3d 1095, 1100 (9th Cir. 2015); *see also In re Pinkney*, 2002 WL 433151, at *3 (Bankr. N.D.N.C. Mar. 8, 2002). Notably, the automatic stay also serves the interests of creditors "by preventing 'dismemberment' of the debtor's assets before the debtor can formulate a repayment plan or, in liquidation cases, the court can oversee equitable distribution of the debtor's assets." *Schwartz-Tallard*, 803 F.3d at 1100. Given its core function in the bankruptcy system, courts typically scrutinize carefully requests for relief from stay, alleged violations of the stay, and arguments concerning the scope of the stay.

The matter before the Court involves the scope of the stay—specifically, whether any aspect of section 362(a) remains applicable to this chapter 13 case. The question arises because the above-captioned Debtor had two chapter 13 cases pending in the past year, and section 362(c)(3) limits the application of the stay in such circumstances. Neither the parties in this matter nor bankruptcy courts agree on exactly what that limitation entails. Some courts interpret section 362(c)(3) to revoke the stay in its entirety if the court does not enter an order extending the stay within 30 days of the filing of the petition (referred to herein as the "minority approach").[1] Other courts take a more narrow approach, reading section 362(c)(3) as eliminating the stay only as to the debtor and the debtor's property (referred to herein as the "majority approach"). This latter approach leaves the stay of section 362(a) in place with respect to property of the estate, even if the court does not enter a timely order extending the stay.

The Court has reviewed the pleadings filed by, and the arguments of, the parties regarding this issue. It also has read and re-read the language of the statute, and reviewed the numerous, very thoughtful opinions of the many courts that have addressed the issue. As more fully explained below, the Court finds little reason for, or merit in, changing the practice in this district, which largely follows the majority approach and Judge Gordon's opinion in *In re Tubman*, 364 B.R. 574 (Bankr. D. Md. 2007).[2]

I.  **Relevant Background**

The Debtor filed this chapter 13 case on February 1, 2018. Pet., ECF 1. The Debtor's previous chapter 13 case, filed on November 8, 2016, was dismissed on November 16, 2017.

---

[1] The Court uses the terms "majority" and "minority" in this decision only to separate and identify the competing lines of cases on the legal issue in a manner that aligns with prior case law. The Court has not conducted a formal tally to determine which position is in the lead at this point. In addition, as explained below, some courts adopt a third approach to section 362(c)(3) that terminates the stay as to property of the debtor and of the estate, but only in certain kinds of actions.

[2] As more fully described below, the Court is aware of some difference in approach in the district.

Mot. to Extend Automatic Stay, ECF 15. Consequently, the Debtor had a previous case that "was pending within the preceding 1-year period but was dismissed." 11 U.S.C. § 362(c)(3). The Debtor filed a timely motion to extend the stay (the "Motion to Extend"), and the Court held two separate hearings on the Motion to Extend. Mot. to Extend Automatic Stay, ECF 15. The Debtor failed to appear at both hearings.[3] Accordingly, the Court denied the Debtor's motion on the record at the close of the second hearing.[4]

One of the Debtor's creditors, Bay-Vanguard Federal Savings Bank (the "Lender"), filed an objection to the Motion to Extend and appeared at both hearings on the motion. Obj., ECF 20. The Lender's objection asserted that the Debtor did not file this chapter 13 case in good faith; therefore, the Lender opposed the relief requested by the motion. Obj., ECF 20; Record Feb. Hrg. at 2:35:25. According to a subsequent pleading filed by the Lender, the Debtor filed both chapter 13 cases to stop foreclosures scheduled by the Lender with respect to the Debtor's primary residence. Mot. for Relief from Automatic Stay, ECF 33. The Debtor's counsel did not deny that the Debtor filed these chapter 13 cases to save the Debtor's home. Counsel argued, however, that the Debtor's circumstances had changed, thereby increasing the Debtor's likelihood of success in this chapter 13 case. Record Feb. Hrg. at 2:33:45; Aff. of Theodore Wood, ECF 22. The Debtor's counsel also indicated on the record that he intended to rely on Judge Gordon's decision in *Tubman*, given the Debtor's inability to attend either hearing. Record Feb. Hrg. at 2:32:42; Record Mar. Hrg. at 10:20:05.

---

[3] The hearings were held on February 28, 2018 ("February Hearing") and March 8, 2018 ("March Hearing"). The Debtor's counsel suggested that the Debtor's work schedule did not permit him to appear at either hearing. Record Feb. Hrg. at 2:31:45; Record Mar. Hrg. at 10:19:35.

[4] Record Mar. Hrg. at 10:21:10. The Court entered an Interim Order Extending the Stay to facilitate the March 8, 2018, hearing. ECF 23. The Court indicated on the record that the denial of the Motion to Extend superseded the Interim Order, but an Order to that effect was not entered. This Order implements and clarifies the Court's oral ruling at the March 8, 2018, hearing.

On June 7, 2018, the Lender filed a Motion to Confirm Termination of the Automatic Stay or, in the Alternative, to Modify the Automatic Stay (the "Stay Motion"). Mot. for Relief from Automatic Stay, ECF 33. By the Stay Motion, the Lender asks this Court to find that the stay terminated as to the Debtor's home, pursuant to section 362(c)(3) of the Code, on March 3, 2018. Alternatively, the Lender seeks relief from the stay under section 362(d)(1) for cause, including the Debtor's failure to make some of the postpetition payments due to the Lender under the loan documents. The Debtor filed a response to the Stay Motion, which contests the scope of section 362(c)(3) and the facts allegedly constituting cause for relief from stay under section 362(d)(1). Resp., ECF 37. The Court held a hearing on the Stay Motion on August 23, 2018 (the "Hearing"). At the Hearing, the parties asked the Court to resolve the contested legal issue in this matter—i.e., the scope of the stay, if any, in this case under section 362(c)(3) of the Code. A resolution of this legal issue potentially could obviate the need for an evidentiary hearing on the section 362(d)(1) issue. The Court agreed to hear the parties' arguments and took the matter under advisement.

## II.     Jurisdiction and Legal Standards

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. § 157(b)(2).

This contested matter involves the scope of the automatic stay imposed by section 362(a) of the Code. The automatic stay generally enjoins collection efforts and other actions against the debtor, the debtor's property, and property of the estate that relate to prepetition matters or conduct. 11 U.S.C. § 362(a). The filing of a bankruptcy petition triggers the protections of the automatic stay in most cases; no separate action or filing is required.

The Code contains exceptions and limitations to the automatic stay, and the automatic stay is not permanent. For example, a party in interest may obtain relief from the automatic stay if, among other things, (i) cause exists or (ii) the debtor lacks equity in the asset and the asset is not necessary for an effective reorganization. 11 U.S.C. §§ 362(d)(1), (2). The automatic stay may terminate because the case is closed or dismissed, or the debtor receives a discharge. 11 U.S.C. § 362(c). The automatic stay also may terminate, at least in some respects, or not go into effect at all, if the debtor files multiple cases in a short period of time. Specifically, subsections (c)(3) and (c)(4) of section 362 provide in relevant part:

> **(3)** if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--
>
> > **(A)** the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;
> >
> > **(B)** on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;
>
> **(4)(A)(i)** if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and
>
> > **(ii)** on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;
> >
> > **(B)** if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates

>that the filing of the later case is in good faith as to the creditors to be stayed;

11 U.S.C. §§ 362(c)(3), (4). The narrow issue before the Court is whether, under the language of section 362(c)(3) of the Code, the automatic stay terminates in all respects after the expiration of the specified 30-day period, if not timely extended by the Court.

### III. Legal Analysis

Sections 362(c)(3) and (c)(4) of the Code address the consequences of a debtor filing multiple, unsuccessful cases in a short period of time. Indeed, the consequences may be severe, as a debtor may receive only limited protection under section 362(c)(3), or no protection under section 362(c)(4), from the automatic stay of section 362(a) of the Code. As noted above, the automatic stay of section 362(a) is a hallmark of U.S. bankruptcy law and one of the key benefits afforded debtors in their efforts to obtain relief from their financial distress and restructure their financial affairs.

As such, when Congress added sections 362(c)(3) and (c)(4) to the Code in 2005, courts and practitioners took notice. Although Congress had, in previous bankruptcy bills, considered amendments to section 362 that contained similar language,[5] the 2005 amendments to the Code provided the first opportunity for courts to determine the effect of the language codified in sections 362(c)(3) and (c)(4). That process has yielded a notable split in the case law, with courts unable to agree on the correct application of section 362(c)(3). As Judge Brown explained in *In re Goodrich*, "[t]he extent to which the automatic stay terminates—and what the remaining stay covers—under [section 362(c)(3)] 'is one of the many portions of BAPCPA which courts have struggled to decipher.'" 587 B.R. 829, 834 (Bankr. D. Vt. 2018) (internal citation omitted).

---

[5] *See, e.g.*, H.R. Rep. No. 105-540, at 15–16 (1998), available at 1998 WL 254742; Sen. Rep. No. 105-253, at 7–8 (1998), available at 1998 WL 414920.

The general disagreement among courts turns largely on what some believe to be ambiguous statutory language and a potential conflict with legislative purpose.

Courts have, for the most part, followed one of two approaches to implementing section 362(c)(3) of the Code.[6] The majority approach adopts a plain meaning reading of the statute, interpreting the words "with respect to the debtor" to indicate a limited termination of the automatic stay. *See, e.g., Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (B.A.P. 1st Cir. 2006).[7] Specifically, the majority approach holds that the stay terminates only as to the debtor and property of the debtor under section 362(c)(3). The minority approach views this result as an anomaly given the general legislative purpose underlying sections 362(c)(3) and (c)(4), namely to deter serial bankruptcy filings. *See, e.g.*, *Goodrich*, 587 B.R. at 844.[8] Accordingly, the minority approach holds that the stay terminates in in all respects under section 362(c)(3). Finally, some courts endorse a third approach that terminates the stay only "as to the continuation of judicial, administrative or other proceedings commenced prior to the bankruptcy filing" involving property of the debtor or property of the estate. *See, e.g.*, *In re Bender*, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016).[9]

---

[6] In *Goodrich*, Judge Brown summarizes the competing approaches to section 362(c)(3) of the Code and articulates her reasons for adopting the minority approach, after previously following the majority approach. Although the Court declines to follow *Goodrich*, it appreciates Judge Brown's exploration of the relevant issues in the opinion.

[7] *See also, e.g., Witkowski v. Knight*, 523 B.R. 291 (B.A.P. 1st Cir. 2014); *Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (B.A.P. 10th Cir. 2008); *In re Weil*, 2013 WL 1798898, at *2, *4 (D. Conn. Apr. 29, 2013); *In re Mortimore*, 2011 WL 6717680, at *6 (D.N.J. Dec. 21, 2011); *In re Roach*, 555 B.R. 840 (Bankr. M.D. Ala. 2016); *In re Hale*, 535 B.R. 520 (Bankr. E.D.N.Y. 2015); *Tubman*, 364 B.R. at 574, 583.

[8] *See also, e.g., Nelson v. George Wong Pension Trust (In re Nelson)*, 391 B.R. 437 (B.A.P. 9th Cir. 2008); *Smith v. Maine Bureau of Revenue Servs.*, 2018 WL 2248586 (D. Me. May 16, 2018); *Vitalich v. Bank of New York Mellon*, 569 B.R. 502 (N.D. Cal. 2016); *In re Jupiter*, 344 B.R. 754 (Bankr. D. S.C. 2006).

[9] As noted above, the Court is aware of some divergence on this issue in this district. *See In re Akwa*, 2016 WL 67219, at *1 (Bankr. D. Md. Jan. 5, 2016) (following the minority approach and explaining that "[i]n this district, a decision, issued before *In re Daniel* was decided, viewed the statute differently from *In re Daniel. See In re Tubman,* 364 B.R. 574 (Bankr.D.Md.2007). However, the Honorable Paul Mannes of this court has declined to follow *In re Tubman,* finding *In re Daniel* and *In re Jupiter,* and the afore–cited article by Professor Bartell, to be more persuasive. *See In re Nwachukwu,* Case No. 14–17937 (Dkt. No. 36), Transcript at 45, 46–47."). Nevertheless, the practitioners appearing before this Court rely heavily on *Tubman* and, although this Court is not bound by it, the Court considers *Tubman* persuasive authority in evaluating the pending matter.

7

The Court has reviewed the many decisions addressing the correct interpretation of section 362(c)(3), and it appreciates the thoughtful analysis and justifications set forth in each. The decisions evidence the challenges posed by the statutory language and the potential tension between that language and the general purpose inferred from the legislative history. They also demonstrate, at least for this Court, that there is no clear answer to the question posed by this contested matter.

That said, the Court endeavors to reach the best result it can based on the information available to it. The Court has read, re-read, and dissected the language of section 362(c)(3) of the Code. It also has reviewed the applicable case law and commentary on this issue. Based on the Court's reading of the statute, and its understanding of the rules of statutory interpretation,[10] the Court finds no significant reason to deviate from the majority approach, which was adopted by Judge Gordon in *Tubman*.[11] 364 B.R. 574. Judge Gordon's reasoning in *Tubman*, again in line with the majority approach, persuasively gives meaning to each word in the statute, implements a result that flows from the plain language of the statute, and does impose some penalty on a

---

[10] *See, e.g.*, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

[11] The Court notes that the difference in approaches to section 362(c)(3) of the Code may have little practical effect in bankruptcy cases. For example, to the extent a creditor opposes the application of the automatic stay to property of the estate, it must file either a motion for relief from stay under the majority approach or an objection to an extension of the stay under the minority approach. Admittedly, the burden of proof is slightly different in each instance, though a creditor bears only the burden of proof with respect to the debtor's equity in the property subject to a motion for relief from stay under section 362(g) of the Code. 11 U.S.C. § 362(g). The debtor bears the burden of proof on all other issues under section 362(g) in the context of a motion for relief from stay and the burden of proof for an extension of the stay under section 362(c)(3). *See id. See also, e.g., In re Mark*, 336 B.R. 260, 264–265 (Bankr. D. Md. 2006). Although the evidentiary standard also is higher in the motion to extend stay context, either approach likely requires action by a creditor who seeks to foreclose on, or take other action affecting, property of the estate. *See, e.g., Mark*, 336 B.R. at 264–265.

debtor.[12] To the extent that Congress intended a different result or a harsher penalty in these instances, it is for Congress—and not the Court—to change the language of the statute.[13]

## IV. Conclusion

For all of the foregoing reasons, the Court adopts the reasoning and holding of *In re Tubman*, 364 B.R. 574 (Bankr. D. Md. 2007). Accordingly, the automatic stay of section 362(a) terminated under section 362(c)(3) only as to the Debtor and property of the Debtor. The automatic stay remains in place in this case with respect to property of the estate pending resolution of the Lender's Stay Motion. The Court will enter a separate Order consistent with this Memorandum Opinion.

**Copies to:**
Debtor
Debtor's Counsel
Creditor's Counsel
Chapter 13 Trustee

**END OF MEMORANDUM OPINION**

---

[12] Although "property of the estate" is a broad concept in bankruptcy cases, particularly in chapter 13 cases, it is not all-inclusive. For example, allowing "actions with respect to debt," which means liability on a claim under section 101(12) of the Code, to proceed "with respect to the debtor" could have significant consequences for a debtor and her efforts to achieve a fresh start. Actions against the debtor and the debtor's property also may be significant in the chapter 7 context, where the estate is generally limited to the debtor's interests in non-exempt property as of the petition date. Indeed, an exempt homestead would not be protected by the automatic stay under the majority approach. *See In re Herrera*, 2017 WL 1533384, at *3 (Bankr. D.P.R. Apr. 27, 2017) (citing *Jumpp* and noting that the parties agreed that no stay was in place as to the debtor's interest in exempt homestead). *See also Roach*, 555 B.R. at 848 ("The *Reswick* panel noted that 'Congress could, and did, intend the consequences of repeat filings to be different, and potentially more severe, as the number of successive filings increase [sic].' *Reswick*, 446 B.R. at 373 (internal quotation marks omitted). Contrary to what the *Reswick* panel implies, the majority view's interpretation of § 362(c)(3)(A) accomplishes that goal."). In addition, in the chapter 7 context, maintaining the automatic stay with respect to property of the estate serves the interests of the estate and the debtor's creditors; it does not benefit the debtor.

[13] *See, e.g., Roach*, 555 B.R. at 848 ("Congress may well have intended § 362(c)(3)(A) to have more bite by allowing secured creditors to recover their collateral when it is property of the estate, but when Congress enacts a statute that is unambiguous and not absurd, '[i]t is beyond [the Court's] province to rescue Congress from its drafting errors, and to provide for what [it] might think is the preferred result.'") (internal citations omitted).